UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| SHERRY LYNN LOCKRIDGE,<br><br>Plaintiff,<br><br>vs.<br><br>ANDREW M. SAUL, Commissioner of the Social Security Administration,<br><br>Defendant. | Civil Action Number<br>**4:19-cv-00255-AKK** |

## **MEMORANDUM OPINION**

Sherry Lynn Lockridge brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). After careful review, the court finds that the Administrative Law Judge ("ALJ") applied the correct legal standards and that the ALJ's decision, which has become the Commissioner's final decision, is supported by substantial evidence. Therefore, the court affirms the decision denying benefits.

**I.  PROCEDURAL HISTORY**

Lockridge worked as a cashier, assistant manager of a retail store, and a materials handler or warehouse worker before she stopped working at age 36 due to her alleged disability. R. 27, 120-21, 134. Thereafter, Lockridge filed applications for disability insurance benefits and supplemental security income, alleging that she

suffered from a disability beginning September 1, 2015, due to chronic fatigue and back problems. R. 146, 252, 234. After the SSA denied Lockridge's applications, R. 164, 155, 170, she requested a formal hearing, R. 42, 44, 175. Subsequently, an ALJ entered a decision finding that Lockridge was not disabled. R. 8-29. The Appeals Council denied Lockridge's request for review, *see* R. 231, rendering the ALJ's decision the final decision of the Commissioner, R. 1. Having exhausted her administrative remedies, Lockridge filed this action pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g). Doc. 1.

## II. STANDARD OF REVIEW

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *Mitchell v. Comm'r of Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011)). Instead, the court must review the final decision

as a whole and determine if the decision is "'reasonable and supported by substantial evidence.'" *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence. *Id.* "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against those findings. *See Martin*, 894 F.2d at 1529. While judicial review of the ALJ's findings is limited in scope, it "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

In contrast to the deferential review accorded the Commissioner's factual findings, "conclusions of law, including applicable review standards, are not presumed valid" and are subject to de novo review. *Martin*, 894 F.2d at 1529. The Commissioner's failure to "apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed" requires reversal. *Id.*

## III. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(1). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). Specifically, the ALJ must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*See McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other

than step three, leads to a determination of 'not disabled.'" *Id*. (citing 20 C.F.R. § 416.920(a)-(f)). "Once [a] finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). However, the claimant ultimately bears the burden of proving that she is disabled, and, "consequently [s]he is responsible for producing evidence in support of [her] claim." *See, e.g.*, *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.945(a), (c)).

## IV. THE ALJ'S DECISION

In performing the five-step analysis, the ALJ first determined that Lockridge had "not engaged in substantial gainful activity since September 1, 2015, the alleged onset date . . . ." R. 14. Accordingly, the ALJ proceeded to Step Two, finding that Lockridge had the following severe impairments: "anxiety, depression, degenerative disc disease, degenerative joint disease, and hypersomnia . . . ." R. 14. The ALJ then proceeded to Step Three and found that none of Lockridge's impairments, considered singly or in combination, met or "medically equal[ed] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . ." R. 15.

Next, the ALJ determined Lockridge's residual functional capacity ("RFC"), finding that based on all of Lockridge's physical and mental impairments:

> [Lockridge] has the [RFC] to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) except she can stand and/or walk no

more than 4 hours of the workday. She can stand or walk no more than 30 minutes at a time. She is allowed a sit/stand option. She can frequently reach except overhead reach will be occasional. She can occasionally balance, stoop, and crouch. She can never kneel, crawl, climb ramps/stairs or climb ladders/ropes/scaffolds. She should avoid concentrated exposure to vibration . . . [and] extreme cold/heat/wetness/humidity. She should avoid all exposure to hazards such as unprotected heights and hazardous machinery. She can occasionally push/pull using her lower extremities. She can never drive a commercial vehicle. She can perform simple routine tasks and she should be provided short simple instructions. She cannot work in close proximity to others. She can have occasional, casual interaction with supervisors, co-workers, and the general public. She can have infrequent workplace changes that will be introduced gradually. She should be provided a break every 2 hours. She cannot work at a fixed production rate pace.

R. 18. Based on this RFC, and relying on the testimony of a vocational expert ("VE"), the ALJ found at Step Four that Lockridge could not perform any past relevant work. R. 27. The ALJ then proceeded to Step Five, where, based on Lockridge's RFC, age, education, and prior work experience, and the testimony of the VE, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that [Lockridge] can perform . . . ." R. 27. As a result, the ALJ found that Lockridge was not disabled from the alleged disability onset date through the date of her decision. R. 28.

**V. ANALYSIS**

On appeal, Lockridge raises four instances of alleged error. Specifically, she contends that the ALJ erred by failing to accord proper weight to the opinions of two treating physicians and by discounting the opinion of an examining physician

provided by the Commissioner. Next, Lockridge claims that the Appeals Council erred by purportedly failing adequately to consider new, material, and chronologically relevant evidence. Finally, Lockridge contends that the ALJ's decision denying benefits is not based on substantial evidence in light of the evidence Lockridge submitted to the Appeals Council. Doc. 9 at 2-3. The court addresses each of these contentions in turn.

### A. Whether the ALJ properly weighed the opinions of Lockridge's treating physicians

Lockridge contends that the ALJ erred by failing to properly consider and weigh the opinions of Drs. Muhammed Shubair and Jason Kelly, two of Lockridge's treating physicians. Doc. 9 at 22-29. An ALJ must consider all medical opinion evidence in the record, 20 C.F.R. § 404.1527(b)-(c),[1] and "state with particularity the weight given to different medical opinions and the reasons therefor," *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). In addition, an ALJ must give "substantial or considerable weight" to the opinion of a treating physician "unless 'good cause' is shown." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440). "Good cause exists 'when []: (1) [the] treating physician's opinion was not bolstered by the evidence; (2) evidence supported a

---

[1] 20 C.F.R. § 404.1520c superseded 20 C.F.R. § 404.1527(b) effective March 27, 2017 for claims filed on or after that date. *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017). The court cites to the regulation that was in effect at the time Lockridge filed her applications.

7

contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.' [] With good cause, an ALJ may disregard a treating physician's opinion, but [s]he 'must clearly articulate [the] reasons for doing so.'" *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1240-41).

The ALJ considered Dr. Shubair's and Dr. Kelly's opinions but gave them only partial or limited weight, respectively. R. 25-26. Lockridge contends that the ALJ improperly substituted her opinion for those of the physicians and asserts that, because the record supports the physicians' opinions, the ALJ did not have good cause to discount the opinions. *See* doc. 9 at 22-29. Lockridge's argument is unavailing because, as an initial matter, the question before the court is whether substantial evidence supports the ALJ's decision, not whether the record may support a contrary finding. *See Martin*, 894 F.2d at 1529. In addition, Lockridge does not discuss why the ALJ's reasons for discounting the opinions do not amount to good cause, or specify what the ALJ failed to consider in reaching her conclusion. *See* docs. 9 at 22-36; 12. Moreover, as discussed below, the ALJ articulated good cause to discount the physicians' opinions, and substantial evidence supports the ALJ's decision.

### 1. Dr. Kelly's opinion

Dr. Kelly, Lockridge's primary care physician, completed a Request for Medical Information Work Requirements form on September 1, 2017 for Alabama's Department of Human Resources' Food Stamp Program in which he indicated that Lockridge was not "mentally and physically able to work" due to Lockridge's "significant anxiety with panic attacks." R. 119, 810. And, Dr. Kelly opined that Lockridge's condition began in 2014, has not been controlled with medication, and is permanent. R. 810. The ALJ considered this opinion but gave it limited weight. R. 25-26. The decision and record reveal that the ALJ stated good cause for her decision to discount the opinion.

First, Dr. Kelly's opinion that Lockridge is unable to work is not entitled to any weight because it is an "issue[] reserved to the Commissioner . . . ." 20 C.F.R. § 404.1527(d)(1). Next, as the ALJ explained, Dr. Kelly's opinion is not consistent with the doctor's own observations or the record as a whole. R. 25-26. In reaching this decision, the ALJ noted that although Dr. Kelly stated that Lockridge's condition began in 2014, Lockridge continued working until September 2015. R. 25, 122, 272. Moreover, Lockridge saw Dr. Kelly on August 12, 2016 to establish care, and treating notes from that visit indicate that Lockridge reported anxiety and depression related to major life stressors and family problems. R. 25, 733. Upon exam, Dr. Kelly found that Lockridge was in no acute distress and had normal mood and affect.

9

R. 734. In addition, Lockridge indicated that her anxiety had previously been controlled with Xanax, and Dr. Kelly restarted Lockridge's Xanax prescription. R. 733-34. Lockridge saw Dr. Kelly again on February 27, 2017 and reported that her anxiety was worse over the previous months, but attributed it to her being without her Xanax, which she represented again had effectively controlled her condition, and she still reported major life stressors. *See* R. 818. Upon exam that day, Dr. Kelly once again found that Lockridge had no acute distress and a normal mood and affect, and he gave Lockridge a new prescription for Xanax. R. 818, 820. Then, in an office visit on September 1, 2017, Lockridge reported that Xanax continues to help with her significant anxiety, and Dr. Kelly again found Lockridge to have normal mood and affect. R. 827. As the ALJ noted, all of these findings are not consistent with Dr. Kelly's opinion that Lockridge's anxiety is a permanent condition that is not controlled with medication, and they provide support for the ALJ's decision to discount the opinion. *See* R. 26.

### 2. Dr. Shubair's opinion

Dr. Shubair, a pulmonologist, treated Lockridge for fatigue and hypersomnia during the relevant time period, and ordered a sleep study for Lockridge, which she had on December 20, 2015. R. 394-417. The sleep study "ruled out narcolepsy and sleep apneas as a cause of [Lockridge's] severe hypersomnia," and the physician who performed the study indicated that medication could be the cause of Lockridge's

10

hypersomnia and recommended an "adjustment of medication." R. 395, 417, 428. At a follow-up visit in January 2016, Dr. Shubair opined in treating notes that Lockridge has "severely impaired judgment and alertness" and "is a great risk to herself and the public as well." R. 395. Dr. Shubair also noted that he supports Lockridge's application for disability. R. 395. The ALJ gave Dr. Shubair's opinion only partial weight because it is "not fully consistent with his own exam findings or the record as a whole" and because it appears that the opinion is based on Lockridge's subjective complaints. R. 26.

In discounting Dr. Shubair's opinion, the ALJ properly considered that the opinion is not consistent with the doctor's own observations or the treating notes from other physicians. R. 26. *See Phillips*, 357 F.3d at 1241 (explaining that good cause to discount a physician's opinion is shown when that "opinion was . . . inconsistent with the doctor's own medical records"); 20 C.F.R. § 404.1527(c)(3)-(4). Indeed, although Dr. Shubair opined in January 2016 that Lockridge's judgment and alertness were severely impaired, his treating notes from physical exams on May 21 and November 24, 2015 indicate that Lockridge had good judgment and was active and alert. R. 397, 399. Similarly, as the ALJ found, Dr. Kelly indicated that Lockridge's mental status was active, alert, and oriented during physical exams in August 2016 and February and September 2017. R. 26, 734, 818, 827. Moreover, although Lockridge has struggled with anxiety and depression, her treating

11

physicians and psychologists have consistently noted during the relevant time period that Lockridge is alert and oriented. R. 3455, 728, 730, 734, 785. All of those notes belie Dr. Shubair's assessment that Lockridge is essentially incapable of functioning in a workplace due to impaired judgment and alertness, and they provide substantial support for the ALJ's decision to give Dr. Shubair's opinion partial weight.

To summarize, the record shows that the ALJ considered the pertinent parts of Drs. Kelly's and Shubair's opinions, that she stated good cause to discount the opinions, and that substantial evidence supports her decision. Accordingly, the ALJ did not rely simply on her own judgment when discounting the opinions, and the ALJ did not err by according the opinions limited or partial weight.

### B. Whether the ALJ properly weighed the opinions of Dr. Ayer

Next, Lockridge argues that the ALJ improperly rejected the opinion of Dr. Anand Iyer, a consultative physician hired by the SSA. Doc. 9 at 29-36. While the opinions of a claimant's treating physician are generally entitled to considerable weight, a one-time examiner's opinions are not entitled to any deference. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (citations omitted). Still, an ALJ cannot substitute his judgment for that of an examining physician when determining the weight to assign the physician's opinion. *See Davis v. Barnhart*, 377 F. Supp. 2d 1160, 1164 (N.D. Ala. 2005) (citing *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992) (Johnson, J., concurring)).

Dr. Iyer performed a physical examination of Lockridge on March 29, 2016, and he observed that Lockridge "had difficulty getting on and off the exam table," positive straight leg raises, an abnormal gait, and could not walk on her tiptoes or squat. R. 454-55. Dr. Iyer also observed that Lockridge's hand grip strength was 5/5, and the "[r]emainder of strength exam [was] 5/5 throughout," and she had a full range of motion in her neck, shoulders, elbows, wrists, hands, hips, knees, ankles, and feet, but a reduced range of motion in her back. R. 455, 457-58. Based on his examination, Dr. Iyer opined that Lockridge "may have some impairment of functions involving sitting, standing, walking, climbing steps, bending, lifting, twisting, carrying, [and] reaching overhead," and "does not have significant limitation of functions involving handling, hearing, and speaking." R. 456. Contrary to Lockridge's contention, *see* doc. 9 at 29-36, the ALJ considered Dr. Iyer's opinion and expressly gave it significant weight because it is generally consistent with the objective record as a whole, R. 25. *See* 20 C.F.R. § 404.1527(c)(4). And, although Lockridge suggests that the ALJ rejected Dr. Iyer's opinion that Lockridge had some impairment in certain functions, doc. 9 at 36, the ALJ's determination of Lockridge's RFC accounted for the limitations Dr. Iyer noted, *see* R. 18. Moreover, Lockridge does not specify any aspect of Dr. Iyer's opinion the ALJ purportedly failed to account for in Lockridge's RFC. *See* doc. 9

at 29-36. As a result, the court finds no error in the ALJ's consideration of Dr. Iyer's opinion.

## C. Whether the Appeals Council erred by not considering materials Lockridge submitted on appeal

Lockridge argues next that the Appeals Council failed to review evidence she submitted. Doc. 9 at 36-40. In general, a claimant may present new evidence in support of her application at each stage of the administrative process. *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1261 (11th Cir. 2007) (citing 20 C.F.R. § 404.900(b)). Thus, a claimant may present new evidence to the Appeals Council, and the Council will review the claimant's case if it "receives additional evidence that is new, material, and relates to the period on or before the date of the [ALJ's] decision, and there is a reasonably probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a). But, effective January 17, 2017, "[t]he Appeals Council will only consider additional [material] evidence . . . if [the claimant] show[s] good cause for not informing [the SSA] about or submitting the evidence" no later than five business days before the administrative hearing. *Id.* at § 404.970(b). "Evidence is material if a reasonable possibility exists that the evidence would change the administrative result." *Hargress v. Soc. Sec. Admin, Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018) (citing *Washington v. Soc. Sec. Admin.*, 806 F.3d 1317, 1320 (11th Cir. 2015)). "[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider

whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262.

Turning to the specifics here, Lockridge submitted to the Appeals Council: (1) a Physical Capacities Evaluation Form signed by Dr. Jane Teschner on September 11, 2018; and (2) medical records from Dr. Kelly dated May 30, 2017 through August 16, 2018.[2] R. 56-107. With respect to the medical records dated after the date of the ALJ's decision, the Appeals Council found that the evidence does not relate to the period at issue and, therefore, does not "affect the decision about whether [Lockridge was] disabled beginning on or before April 30, 2018." R. 2. Indeed, a review of the medical records at issue reveals that they describe Lockridge's condition at the time of treatment, i.e., after the ALJ's decision, and do not relate to the relevant time. *See* R. 64-74. As a result, those records are not chronologically relevant because "nothing in the[] new medical records indicates . . . that the information in them relates to the period at issue . . . ." *Hargress*, 883 F.3d at 1309-10.

With respect to Dr. Teschner's opinion and the medical records that pre-date the ALJ's decision, the Appeals Council found that "this evidence does not show a reasonable probability that it would change the outcome of the [administrative]

---

[2] Lockridge submitted records relating to a February 27 and September 1, 2017 visits with Dr. Kelly, R. 77-83, 91-96, but she had previously submitted those records to the SSA, 818-31, and the ALJ considered those records in reaching her decision, R. 22-23.

15

decision." R. 2. Lockridge contends that this statement establishes that the review of the evidence was "purely conclusory" and "epitomizes 'perfunctory adherence' to the ALJ decision." Doc. 9 at 38. And, according to Lockridge, *Epps v. Harris*, 624 F.2d 1267 (5th Cir. 1980), requires the court to reverse the adverse decision. Doc. 9 at 38. But, *Epps* is distinguishable because the Appeals Council there affirmed the ALJ's decision instead of simply denying review. 624 F.2d at 1269. "*Epps* therefore does not speak to or control [this] case, which involved the Appeals Council's denial of a request for review." *Mitchell*, 771 F.3d at 783. And, the Eleventh Circuit has held that when denying a claimant's request for review, the Appeals Council is not required "to give a detailed rationale for why each piece of new evidence submitted to it does not change the ALJ's decision" or "provide a detailed rationale for denying review." *Id.* at 784. (citations omitted). Consequently, Lockridge cannot show error based on the Council's purportedly conclusory statement about the new evidence she submitted.

In addition, the record supports the Council's determination that the relevant evidence Lockridge submitted would not change the administrative decision. To begin, Dr. Teschner completed a Physical Capacities Evaluation Form in which she opines that Lockridge can only sit upright or stand for up to thirty minutes at one time, would need to lie down or sit with her legs up for four hours and be off-task 50% of the time during an eight-hour workday, would miss more than five days of

16

work during a thirty-day period, and that Lockridge has had these limitations since 2012. R. 107. But, the form's conclusory nature provides good cause to discount the opinions. *See Winschel*, 631 F.3d at 1179. In addition, Dr. Teschner's opinion that Lockridge has been essentially incapable of working since 2012 is contrary to the evidence that Lockridge worked until September 2015. *See* R. 122, 272. And, the extent of limitations reflected in Dr. Teschner's opinion is contrary to Dr. Iyer's findings that Lockridge has only some impairment in sitting, standing, and walking. *See* R. 454-56. Finally, although Lockridge has the burden of proving that she is disabled, she has not specifically pointed to any objective evidence in the record that supports the extent of the limitations Dr. Teschner noted. *See* docs. 9; 12. Thus, Lockridge has not shown that there is a reasonable possibility that consideration of the form would have changed the administrative result, or that the form is material.

With respect to the chronologically relevant medical records Lockridge submitted to the Appeals Council—i.e., Dr. Kelly's treating notes from Lockridge's office visits on May 30, 2017, December 28, 2017, and April 16, 2018,[3] R. 56-63, these records do not warrant a reversal of the Commissioner's decision. Dr. Kelly's records reflect that on May 30, 2017, Lockridge reported that the Xanax was helping her cope and that she had been feeling less irritable and agitated. R. 85. At a follow-

---

[3] Lockridge also submitted notes from phone calls to Dr. Kelly's office related to lab results or prescription, R. 62-63, 84, 103-04, but she has not presented any argument that those records could have changed the ALJ's analysis, *see* docs. 9; 12.

up visit on December 28, 2017, Lockridge reported that "things have been worse," that she had "tons of family issues," and had cut her Xanax in half and took them only as needed due to her finances. R. 97. But, upon examination, Dr. Kelly found that Lockridge was not in acute distress, and had normal mood and affect. R. 97. Then, at a visit on April 16, 2018, Lockridge reported that her anxiety was the same, she still had "life issues" to deal with, and "the medication continues to help." R. 56. Upon exam, Dr. Kelly again found that Lockridge was alert and oriented, and had normal mood and affect. R. 85. Thus, these medical records do not indicate a deterioration of Lockridge's anxiety or depression. Rather, they are consistent with, and cumulative of, the records the ALJ considered in reaching her decision, and do not show that the ALJ's decision denying benefits is erroneous. *See Beavers v. Soc. Sec. Admin., Comm'r*, 601 F. App'x 818, 821-23 (11th Cir. 2015) (citations omitted).

Simply put, the records Lockridge submitted to the Appeals Council do not show that the ALJ's decision is contrary to the weight of the evidence, and the Council did not err by denying review. *See Mitchell*, 771 F.3d at 785 (citations omitted).

### D. <u>Whether substantial evidence supports the ALJ's decision</u>

Finally, Lockridge contends that the ALJ's decision is not based on substantial evidence in light of the evidence she submitted to the Appeals Council. Doc. 9 at 40-44. But, as discussed above, the chronologically relevant evidence Lockridge

submitted to the Appeals Council is either conclusory or merely cumulative of records considered by the ALJ. *See* Section V(C), *supra*. And, Lockridge does not specify what evidence in the records she submitted to the Council, aside from Dr. Teschner's conclusory opinion, is contrary to the ALJ's determination of Lockridge's RFC or the ultimate decision denying benefits. *See* docs. 9 at 36-44; 12. Thus, "[b]y failing to specify which aspect of the ALJ's decision was incorrect or unsupported by substantial evidence, [Lockridge] has abandoned any challenge to the factual accuracy of the ALJ's conclusion." *Jackson v. Soc. Sec. Admin., Comm'r*, 779 F. App'x 681, 684 (11th Cir. 2019) (citing *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014)).

It is evident that Lockridge has suffered from depression and anxiety for years and that she because she believes the evidence supports a finding of disability. However, the ALJ's decision reveals that "[s]he did consider all of the evidence and found that it did not support the level of disability [Lockridge] claimed," *Freeman v. Barnhart*, 220 Fed. Appx. 957, 960 (11th Cir. 2007), and Lockridge does not point to specific evidence that the ALJ overlooked or failed to address, *see* docs. 9; 12. Thus, no basis exists to reverse the ALJ's decision.

## VI. CONCLUSION

Based on the foregoing, the court concludes that the ALJ's determination that Lockridge is not disabled is supported by substantial evidence, and that the ALJ

19

applied proper legal standards in reaching her decision. Therefore, the Commissioner's final decision is due to be affirmed. A separate order in accordance with the memorandum of decision will be entered.

    **DONE** the 30th day of December, 2019.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE
